1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY RUTH SEXTON<br><br>                    Plaintiff,<br><br>          v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | Case No. 1:21-cv-00379-EPG<br><br>FINAL JUDGMENT AND ORDER<br>REGARDING PLAINTIFF'S SOCIAL<br>SECURITY COMPLAINT<br><br>(ECF Nos. 1, 19). |

20      This matter is before the Court on Plaintiff's complaint for judicial review of an

21  unfavorable decision by the Commissioner of the Social Security Administration regarding her

22  application for disability insurance benefits. The parties have consented to entry of final judgment

23  by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal

24  to the Court of Appeals for the Ninth Circuit. (ECF No. 14).

25      Plaintiff presents the following issues:

26      1. The ALJ failed to properly evaluate the medical opinion evidence consistent
        with Agency authority and Ninth Circuit precedent, in particular regarding
27      Plaintiff's standing/walking limitations and hand and arm use limitations.

28

1

2. The ALJ's "credibility" assessment is deficient generally because of the error described above, but also specifically so in failing to consider Plaintiff's stellar work history.

3. The decision in this case, by . . . Appeals Council AAJs who derive their authority from the Commissioner that was not constitutionally appointed, is constitutionally defective, requiring remand.

(ECF No. 19, p. 3). Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

I.    **ANALYSIS**

A.    **Evaluation of Opinions of Dr. Ramayya and Dr. Sirakoff**

Plaintiff argues that the ALJ did not properly evaluate the medical opinions of Dr. Ramayya and Dr. Sirakoff under the pertinent legal authority. (ECF No. 19, p. 14). As an initial matter, the parties agree that this claim is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.[1] 20 C.F.R. §§ 404.1520c, 416.920c; (ECF No. 19, p. 13; ECF No. 20, p. 11). The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

While case authority preceding the new regulations required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008), Plaintiff does not argue that these articulation standards still apply with the passage of the new regulations, nor could she in light of the Ninth Circuit's recent decision in *Woods v. Kijakazi*, No. 21-35458, 2022 WL 1195334 (9th Cir. Apr. 22, 2022).

The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when

---

[1] Plaintiff applied for benefits on August 24, 2017.

1    discrediting evidence from certain sources necessarily favors the evidence from
     those sources—contrary to the revised regulations.

2
*Id.* at *6 (internal citation omitted).  Accordingly, under the new regulations, "the decision to

3
discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at *1.

4
"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v.*

5
*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the

6
record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

7
       In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive'

8
it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b),

9
and 'explain how [it] considered the supportability and consistency factors' in reaching these

10
findings, *id.* § 404.1520c(b)(2)." *Woods*, 2022 WL 1195334, at *6.

11
       Supportability means the extent to which a medical source supports the medical
12     opinion by explaining the "relevant . . . objective medical evidence." *Id.*
       § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is
13     "consistent . . . with the evidence from other medical sources and nonmedical
       sources in the claim." *Id.* § 404.1520c(c)(2).
14
*Id.*

15
                    1.       **Dr. Ramayya's Opinion**
16
       Plaintiff challenges the ALJ's assessment of the medical opinions of Dr. Ramayya and Dr.
17
Sirakoff. The ALJ concluded that Dr. Ramayya's opinion was less persuasive, explaining as
18
follows:
19
       Second, the undersigned considered the opinion of Dr. Aruna S. Ramayya, M.D.,
20     the claimant's own medical source and primary care physician who has treated the
       claimant for twenty-four years (6F). She opined that the claimant would be off task
21     more than twenty-five percent of her workday and she could maintain attention
       and concentration for less than fifteen minutes before needing a break (6F/7). The
22     claimant would be absent more than four days a month as the result of her
       impairments or treatment (6F/5). The claimant could lift and/or carry less than ten
23     pounds (6F/8). The claimant could sit, stand, or walk for one hour in a normal
       workday and would need to sit and stand at will (6F/8). Dr. Ramayya opined that
24     the claimant would need to recline throughout the day for twenty minutes each
       time (6F/8). The claimant must use a cane and a walker to ambulate more than one
25     or two blocks (6F/8-9). The claimant can frequently reach, handle, finger, feel,
       push, and pull with her bilateral upper extremities (6F/9). She can frequently use
26     foot controls with her bilateral lower extremities (6F/9). The claimant could rarely
       balance, stoop, and rotate her head and neck, but never kneel, crouch, or crawl
27

28

                                                  3

(6F/10). The claimant could occasionally climb ramps and stairs (6F/10). The claimant could never ladders, ropes, or scaffolds (6F/10). She could never work at unprotected heights and rarely work around moving mechanical parts (6F/10). The claimant could occasionally operate a vehicle, be exposed to humidity, wetness, pulmonary irritants, temperature extremes, and vibrations (6F/10).

The undersigned finds Dr. Ramayya's opinion less persuasive. Dr. Ramayya did not indicate on the form the specific findings she relied on when making her decision. Her exam findings also do not support her opinion because her physical findings are normal and her psychiatric findings are based solely on the claimant's subjective statements (2F; 9F). Dr. Ramayya based her opinion on the claimant's subjective statements and the imaging studies. The evidence of the claimant's stable exam findings, conservative treatment, and overall normal gait, range of motion, and motor strength in all her joints is inconsistent with Dr. Ramayya's opinion overall. For example, the claimant has a normal gait, which is inconsistent with Dr. Ramayya's finding that the claimant required an assistive device for ambulation or could frequently use foot and leg controls. The claimant can drive for one hour to reach her doctor, which is inconsistent with Dr. Ramayya's opinion the claimant could only sit for one hour in an eight-hour day. Additionally, there is no evidence that the claimant's impairments were exacerbated by any environmental factors. The claimant's family helped her move and she has befriended her neighbors. This is inconsistent with Dr. Ramayya's mental limitations. However, the evidence of the claimant's pain within the range of motion in her bilateral wrists is consistent with Dr. Ramayya limiting the claimant to frequent manipulative activities. For these reasons, the undersigned finds Dr. Ramayya's opinion less persuasive.

(A.R. 25-26).[2]

The ALJ's first reason to discount the persuasiveness of Dr. Ramayya's opinion is that the form used did not indicate what specific findings were used to make her decision. This reason invokes the supportability factor, which considers the relevant objective medical evidence and supporting explanations for a medical source opinion. Indeed, the checklist form used by Dr. Ramayya lacks specific findings. For example, while Dr. Ramayya opined that Plaintiff was limited to one hour total of sitting and standing/walking in an eight-hour workday, the section of the form asking for an explanation of "why" "particular medical or clinical findings" supported this assessment was left blank. (A.R. 497). Accordingly, given the lack of specific support for the limitations assessed, it was reasonable for the ALJ to deem the opinion less persuasive. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) ("The ALJ, however, permissibly rejected [evaluations]

---

[2] Plaintiff "asserts no error regarding the ALJ's findings about her mental health impairments." (ECF No. 19, p. 4 n.3).

1   because they were check-off reports that did not contain any explanation of the bases of their

2   conclusions.").

3       The next reason given to discount the persuasiveness of Dr. Ramayya's opinion is that it

4   was inconsistent with the record, *e.g.*, normal physical findings, conservative treatment, and

5   Plaintiff's abilities. This reasoning invokes the consistency factor, which considers whether a

6   medical opinion is consistent with other evidence from other medical and nonmedical sources.

7   While Plaintiff criticizes the ALJ for not "clarify[ing] the ALJ's reasoning for finding Dr.

8   Ramayya's opinion unpersuasive," the Court concludes that the explanation offered was

9   sufficiently clear. For example, the ALJ pointed to specific inconsistencies in the record: that

10  Plaintiff's normal gait was "inconsistent with Dr. Ramayya's finding that the claimant required an

11  assistive device for ambulation or could frequently use foot and leg controls" and that Plaintiff's

12  one hour drive for doctor visits was "inconsistent with Dr. Ramayya's opinion the claimant could

13  only sit for one hour in an eight-hour day." (A.R. 26, 60 (noting hour drive to doctor visits), 419

14  (noting normal gait)). While Plaintiff points to other record evidence and alternative reasoning

15  that might support her argument (ECF No. 19, pp. 16-29), the Court's concludes that the record

16  reasonably supported the ALJ's decision. *See Thomas*, 278 F.3d at 954 ("Where the evidence is

17  susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the

18  ALJ's conclusion must be upheld.").

19      Accordingly, the Court concludes that the ALJ's decision to deem Dr. Ramayya's opinion

20  less persuasive was supported by substantial evidence after consideration of the supportability

21  and consistency factors.

22              **2.      Dr. Sirakoff's Opinion**

23      The ALJ concluded that Dr. Sirakoff's opinion was not persuasive, explaining as follows:

24      Specifically, the undersigned considered the opinion of Dr. Dimitri Sirakoff, D.O.,
        the claimant's own medical source and overall worker's compensation evaluator
25      (1F/40). In reference to the patient's cervical spine, he found the claimant was
        precluded from repetitive neck bending and neck motions (1F/40). In addition, she
26      is also permanently precluded from abrupt or prolonged posturing of the cervical
        spine (1F/40). The claimant must be allowed to wear a C-collar support at work
27      (1F/40). She should also be provided an ergonomic workstation (1F/40). In

28

reference to the patient's lumbar spine, she is precluded from repetitive forward bending (1F/40). She should be allowed to wear a thoracolumbar posture support brace at work (1F/40). Finally, Dr. Sirakoff opined that the claimant could return to her present occupation if the above restrictions could be accommodated (1F/40).

For similar reasons, the undersigned finds Dr. Sirakoff's . . . opinions not overly persuasive. [Dr. Sirakoff's] opinions are not expressed in terms consistent with the Agency's regulations. The doctor[] did not contemplate all of the claimant's impairments. . . . Dr. Sirakoff's findings do not support his opinion. While he observed the claimant wore a back brace to the exams and used a cane, neither device was prescribed by a doctor (1F/4). Dr. Sirakoff prescribed a conservative treatment plan for the claimant, including osteopathic medical care, chiropractic treatment, active and passive range of motion exercise, physical modalities, and stretching and strengthening exercises (1F/36). This does not support Dr. Sirakoff's findings that the claimant was permanently precluded from cervical spine posturing and repetitive bending.

[And] Dr. Sirakoff's . . . are [not] consistent with the record. While the claimant's cervical spine range of motion was decreased, she was never told to wear a C-collar all the time and her primary care physician told the claimant to use it to alleviate headaches. This is inconsistent with the findings that the claimant was precluded from postural activities. Rather this evidence is consistent with the residual functional capacity limiting the claimant to occasional postural activities. . . . For these reasons, the undersigned finds the specific worker's compensation findings of Dr. Sirakoff . . . are not persuasive.

(A.R. 26-27).[3]

The ALJ's first reason to discount the persuasiveness of Dr. Sirakoff's opinion is that it was not expressed in terms consistent with social security regulations. This rationale goes to the supportability factor and was reasonable to note given that workers' compensation guidelines are not controlling in the social security context. *See Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) ("The categories of work under the Social Security disability scheme are measured quite differently" than those under California workers' compensation law.). However, an ALJ is still entitled to draw logical inferences from non-controlling guidelines, *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996), and Plaintiff argues that the ALJ's analysis threw out the "baby with the bathwater." (ECF No. 19, p. 19). The Court disagrees.

The ALJ cited the disconnect between the workers' compensation and social security

---

[3] The Court has removed portions of the ALJ's discussion that reference Dr. Emily P. Wakim, whose opinion is not at issue in this case.

6

1    guidelines as one, among other reasonable bases, to not find Dr. Sirakoff's opinion persuasive.

2    Notably, the ALJ cited specific inconsistencies between Dr. Sirakoff's opinion and the record,

3    *e.g.*, the claimant's use of a non-prescribed cane and back brace and Dr. Sirakoff's

4    recommendation of a conservative treatment plan. (A.R. 321 (stating that Plaintiff should be

5    "considered to undergo conservative medical management")); *see Parra v. Astrue*, 481 F.3d 742,

6    751 (9th Cir. 2007) ("We have previously indicated that evidence of 'conservative treatment' is

7    sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation

8    omitted).

9         Accordingly, the Court concludes that the ALJ's decision to deem Dr. Sirakoff's opinion

10   not persuasive was supported by substantial evidence after consideration of the supportability and

11   consistency factors.

12        Lastly, Plaintiff argues that if the ALJ had found the opinions of Dr. Ramayya and Dr.

13   Sirakoff as persuasive as some state agency consulting opinions in the record, a separate

14   provision from the new regulations would have been triggered, requiring the ALJ to consider the

15   treatment relationship between her and the doctors who gave equally persuasive opinions. (ECF

16   No. 19, p. 21); (*see* A.R. 25 (finding opinions of Dr. Rule and Dr. Vaghaiwalla "persuasive

17   overall")).

18        As the Ninth Circuit has noted,

19        The revised regulations recognize that a medical source's relationship with the
20        claimant is still relevant when assessing the persuasiveness of the source's opinion.
          *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose
21        of the treatment relationship, the frequency of examinations, the kinds and extent
          of examinations that the medical source has performed or ordered from specialists,
22        and whether the medical source has examined the claimant or merely reviewed the
          claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer
23        needs to make specific findings regarding these relationship factors:

24             [W]e will explain how we considered the supportability and consistency
25             factors for a medical source's medical opinions . . . in your determination
               or decision. We may, but are not required to, explain how we considered
26             the [relationship] factors ... when we articulate how we consider medical
               opinions . . . in your case record.
27
          *Id.* § 404.1520c(b)(2) (emphasis added).
28

A discussion of relationship factors may be appropriate when "two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . .  but are not exactly the same." *Id.* § 404.1520c(b)(3). In that case, the ALJ "will articulate how [the agency] considered the other most persuasive factors." *Id.* Other factors include relationship factors, *id.* § 404.1520c(c)(3), whether the medical source's opinion concerns "medical issues related to his or her area of specialty," *id.* § 404.1520c(c)(4), and any "other factors that tend to support or contradict [the] medical opinion," *id.* § 404.1520c(c)(5).

*Woods*, 2022 WL 1195334, at *6.

Here, because the Court has concluded that the ALJ did not err regarding the persuasiveness assigned to the opinions of Dr. Ramayya and Dr. Sirakoff, there were not two or more medical opinions that were equally well-supported and consistent with the record but not exactly the same. Thus, the Court rejects Plaintiff's argument that the ALJ was required to discuss the relationship factors.

### B.    Credibility

Plaintiff next argues that the ALJ erred in rejecting her subjective complaints. Generally, Plaintiff references her prior argument regarding the ALJ's discounting of the opinions of Dr. Ramayya and Dr. Sirakoff and states that the ALJ's credibility finding is erroneous for the same reasons. (ECF No. 19, p. 22). And Plaintiff adds that the ALJ erred by failing to consider "her near perfect wor[k] record for 30 years prior to filing her claim for disability." (ECF No. 19, p. 23). Plaintiff reasons that it would be illogical for her to give up her career to receive less lucrative disability benefits. (*Id.*).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

8

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an

ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the

record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

       As an initial matter, the ALJ concluded that Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms." (A.R. 22).

Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the

Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial

evidence, for not giving full weight to Plaintiff's symptom testimony.

       The ALJ summarized Plaintiff's complaints as follows:

> At the hearing, the claimant alleged she could not work because she could not sit
> or stand for long periods. She also could not talk on the phone or use a computer
> because of the pain in her hands. She uses a neck brace to relieve her neck pain.
> She stopped taking pain medication because she was taking it so long that it
> stopped working and the doctors were worried about liver damage. She treated her
> pain with a surgery that burned her nerves. She also uses exercise to treat her pain.
> The claimant has pain that starts in her wrists, moves up her arms, and into her
> shoulders. The injections for her back pain have not helped. She does her
> household chores less often and does them more slowly. She testified that her
> neighbors help her with household chores.

(A.R. 22). Because Plaintiff does not challenge the ALJ's reasons for discounting her subjective

complaints, the Court does not recite the ALJ's entire discussion. However, the ALJ generally

reasoned that the degree of limitations that Plaintiff alleged were inconsistent with normal

medical findings, conservative treatment, and Plaintiff's daily activities. (A.R. 22-25).

       As an initial matter, to the extent that Plaintiff reincorporates her argument challenging

the ALJ's rejection of opinion testimony, the Court concludes that the ALJ did not err for the

reasons given above. Next, to the extent that Plaintiff argues that the ALJ's decision is erroneous

based on the alleged failure to consider Plaintiff's work history, the Court disagrees.

       True, social security regulations require an ALJ to consider "all of the evidence presented,

including information about [a claimant's] prior work record." 20 C.F.R. § 404.1529(c)(3).

However, an "ALJ is not required to discuss evidence that is neither significant nor probative."

*Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Despite Plaintiff characterizing her work history as "stellar," she offers no developed argument as to what in her work history was significant or probative as to her credibility determination. Accordingly, the Court cannot conclude that the ALJ was required to discuss it.

Moreover, while the ALJ never engaged in a detailed discussion of Plaintiff's work history in considering her credibility, the ALJ discussed it generally such that the Court is satisfied that the ALJ considered it. For example, the ALJ noted that Plaintiff was able to "describe her prior work history." (A.R. 20). And the ALJ noted the Plaintiff's discussion of her work history at the hearing. (A.R. 22, 42-45 (discussion of Plaintiff's 26 years as an account manager at a shipping company)). Given Plaintiff's failure to explain how the ALJ was obligated to further address her work history, the Court finds no reason to overturn the ALJ's credibility determination.

### C.      Unconstitutional Administrative Process

Lastly, Plaintiff argues that, because the Appeals Council derived its authority to hear the claim from an unconstitutional delegation of authority, the Court should vacate and remand.[4] (ECF No. 17, p. 23). Specifically, Plaintiff argues that 42 U.S.C. § 902(a)(3), which allows the Commissioner to be removed "only pursuant to a finding by the President of neglect of duty or malfeasance in office," violates the separations of powers doctrine. And because former-Commissioner Saul was appointed under an unconstitutional removal provision, the delegation of authority to the Appeals Council was unconstitutional, and it had no authority to render a decision in this case.

Defendant agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. (ECF No. 20, p. 11). However, Defendant argues that this alone does not justify a remand.

---

[4] Plaintiff initially argued that the ALJ acted under an unconstitutional delegation of authority, but later waived that argument in her reply brief. (ECF No. 21, p. 2 ("To be clear for what follows, she will not pursue the ALJ issue any further because the ALJ issued her decision while former President Trump was still in office.")).

Instead, a party seeking remand must show that the restriction on removal authority actually caused her harm. Here, Plaintiff cannot do so because the removal restriction did not affect the determination of Plaintiff's claim.  Defendant also argues that various other legal doctrines including harmless error, *de facto* officer, and the rule of necessity, as well as prudential considerations caution against remand here.

The Ninth Circuit's recent opinion in *Kaufmann v. Kijakazi*, No. 21-35344, 2022 WL 1233238 (9th Cir. Apr. 27, 2022), decided after the opening and opposition briefs were filed, is dispositive of this issue. In *Kaufman*, the Ninth Circuit held that § 902(a)(3) "violates separation of powers principles and must be severed from the statute." *Id.* at *2. However, the Court concluded that an actual showing of harm is still required to warrant relief. *Id.* at *5. This requires a showing that the removal restriction affected the claimant in a particularized way, "for example, that the President took an interest in her claim or that the Commissioner directed the Appeals Council to decide her case in a particular way because of the statutory limits on the President's removal authority." *Id.* A generalized argument "that the unconstitutional removal provision affected the "expected value" of Claimant's claim because the Commissioner theoretically could act in more ways than he could have without the removal restriction," is insufficient to show actual harm. *Id.*

Here, Plaintiff argues that the harm she suffered was denial of a constitutionally valid adjudication process and decision. (ECF No. 21, p. 2). However, such argument is not specific to Plaintiff and does not show that the President took an interest in her claim or directed the Appeals Council to decide her case in a particular way. Rather, if the Court agreed, it would result in the "undo[ing] [of] *all* disability decisions made by the Social Security Administration while the removal provision was operative." *Kaufmann*, 2022 WL 1233238, at *5. Plaintiff also argues that she has established actual harm based on President Biden's apparent delay in terminating Commissioner Saul combined with a White House statement at the termination criticizing Commissioner Saul for politicizing social security benefits and reducing due process protections

for appeals hearings.[5]  (ECF No. 21, at p. 3). However, such speculation around the timing of Commissioner Saul's removal and President Biden's criticism does not establish that President Biden "would remove the [Commissioner] if the statute did not stand in the way."[6] *Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021); *Kathy R. v. Kijakazi*, No. 2:21-CV-00095-JDL, 2022 WL 42916, at *4 (D. Me. Jan. 5, 2022), *report and recommendation adopted*, 2022 WL 558359 (D. Me. Feb. 24, 2022) (addressing and rejecting argument that timing of Commissioner Saul's removal satisfied the necessary nexus between the unconstitutional provision and the harm alleged by plaintiff ). Because Plaintiff offers no evidence of actual harm, this claim fails.

## II.      CONCLUSION AND ORDER

Accordingly, the decision of the Commissioner of Social Security is hereby affirmed. And the Clerk of the Court is directed to close this case.


IT IS SO ORDERED.


Dated:   __May 9, 2022__                             /s/ _Erica P. Grosjean_
                                                        UNITED STATES MAGISTRATE JUDGE

---

[5] Notably, Plaintiff improperly raised this argument for the first time in her reply brief, thus depriving Defendant of an opportunity to respond to it. *See Brand v. Kijakazi*, No. 2:20-CV-02219-NJK, 2021 WL 5868131, at *6 (D. Nev. Dec. 10, 2021) (concluding that plaintiff waived same argument by raising it for the first time in plaintiff's reply brief). However, for the reasons above, it would fail even if Plaintiff had not waived the argument.

[6] Although Plaintiff calls much attention in her reply to the timing of President Biden's decision to remove Commissioner Saul from office upon purportedly learning his ability to do so, Plaintiff's opening brief also asserts that the unconstitutionality of the removal provision has been questioned since President Clinton was in office. (ECF No. 19, pp. 24-25, n. 15; ECF No. 21, p. 3).